IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


EUGENE CONNORS,                          §
                                         §
     Plaintiff,                          §
                                         §
v.                                       §      CIVIL ACTION NO. H-10-4323
                                         §
COLLEGE OF THE MAINLAND, DON             §
CRISS, MICHAEL ELAM, RALPH               §
HOLM, ANNETTE JENKINS, ROSALIE           §
KETTLER, BENNIE MATTHEWS,                §
CLEMON PREVOST, BILL SPILLAR,            §
NICK STEPCHINSKI, JAMES                  §
TEMPLER, and LISA TEMPLER,               §
                                         §
     Defendants.                         §


MEMORANDUM AND ORDER


     Pending is Defendants'[1] Motion for Summary Judgment (Document
No. 45) on Plaintiff's claims for: retaliation against Plaintiff's
First Amendment free speech rights, retaliation under Title VII,
tortious interference with an existing contract, and breach of
contract.[2]   The background for this case is summarized in the

---

[1] Defendants are College of the Mainland ("the College") and
Don Criss, Michael Elam, Ralph Holm, Annette Jenkins, Rosalie
Kettler, Bennie Matthews, Clemon Prevost, Bill Spillar, Nick
Stepchinski, James Templer, and Lisa Templer ("Individual
Defendants").   The Individual Defendants are the College's
president, members of its Board of Trustees, and non-Trustee
members of the administration.

[2] Defendants' Second 12(b)(6) Motion to Dismiss for Failure to
State a Claim (Document No. 27), however meritorious, need not be
discussed because this ruling on the summary judgment motion
disposes of all issues.

Court's Memorandum and Order signed September 8, 2011.[3]   After
having carefully considered the pending motion, response, reply,
and the applicable law, the Court concludes that the motion should
be granted.

### I.   Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries
this burden, the burden shifts to the nonmovant to show that
summary judgment should not be granted.  Morris v. Covan World Wide
Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing
a properly supported motion for summary judgment may not rest upon
mere allegations or denials in a pleading, and unsubstantiated
assertions that a fact issue exists will not suffice.  Id.  "[T]he
nonmoving party must set forth specific facts showing the existence
of a 'genuine' issue concerning every essential component of its
case."  Id.  "A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by: (A) citing to
particular parts of materials in the record . . .; or (B) showing
that the materials cited do not establish the absence or presence
of a genuine dispute, or that an adverse party cannot produce

---

[3] Document No. 21.

admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).
"The court need consider only the cited materials, but it may
consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district
court must view the evidence "through the prism of the substantive
evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.
2505, 2513 (1986). All justifiable inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper. Kelley v. Price-
Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other
hand, if "the factfinder could reasonably find in [the nonmovant's]
favor, then summary judgment is improper." Id. Even if the
standards of Rule 56 are met, a court has discretion to deny a
motion for summary judgment if it believes that "the better course
would be to proceed to a full trial." Anderson, 106 S. Ct. at
2513.

## II.  Discussion

## A.  Section 1983 Claim

Plaintiff sues the College and the Individual Defendants under
42 U.S.C. § 1983 based on their alleged retaliation against his

3

First Amendment right to free speech.[4]  The elements of this claim
are:  (1) Plaintiff suffered an adverse employment action; (2) his
speech involved a matter of public concern; (3) his interest in
commenting on matters of public concern outweigh the public
employer's interest in efficiency; and (4) the speech motivated the
adverse employment action.  DePree v. Saunders, 588 F.3d 282, 286-
87 (5th Cir. 2009).

Defendants cite the fourth element, arguing that Plaintiff has
not shown that his speech was a motivating factor in the decision
not to renew his contract.  To establish the fourth element,
Plaintiff must show that his protected speech was a substantial or
motivating factor behind the adverse employment action.  Brady v.
Houston Indep. Sch. Dist., 113 F.3d 1419, 1423 (5th Cir. 1997).  If
Plaintiff shows that his protected speech was a motivating factor
in the nonrenewal of his contract, the burden shifts to Defendants
to show that they would have reached the same decision in the

---

[4] Section 1983 does not create substantive rights but rather
is merely a procedural rule that provides a private cause of action
for redressing a violation of federal law or "vindicating federal
rights elsewhere conferred."  Albright v. Oliver, 114 S. Ct. 807,
811 (1994) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694 n.3
(1979)).   "Thus, an underlying constitutional or statutory
violation is a predicate to liability under § 1983."  Johnston v.
Harris Cty. Flood Control Dist., 869 F.2d 1565, 1574 (5th Cir.
1989).  To state a viable claim under § 1983, "a plaintiff must (1)
allege a violation of rights secured by the Constitution or laws of
the United States and (2) demonstrate that the alleged deprivation
was committed by a person acting under color of state law."
Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir.
1994).

absence of the protected speech.  Beattie v. Madison Cty. Sch.
Dist., 254 F.3d 595, 601 (5th Cir. 2001).

Plaintiff began working in the Human Resources Department of
the College in June 2001 under a one-year contract and received
renewals of one-year contracts from year to year thereafter until
2009.[5]  In July 2008, Plaintiff testified under subpoena in a case
brought by the College asserting ownership rights in certain
copyrights.  Plaintiff testified that the College's then-president
had said to Plaintiff in a private conversation that he "had given
the copyrights away" to the adverse party.  Thereafter, Plaintiff
began serving under a renewed one-year contract, which began
September 1, 2008.  In November, 2008, Lisa Templer, who had become
Plaintiff's direct supervisor in the Spring of 2008, gave him a
performance review of his previous year's work.  Ms. Templer
expressed disappointment about Plaintiff's testimony the previous
July and, according to Plaintiff, spent a large portion of their
performance review meeting on that subject.

The next year the College hired Michael Elam as its new
president, and Elam assumed office on April 1, 2009.  President
Elam proposed that the Board shorten from six months to three
months the period of notice given to employees on one-year

---

[5] Document No. 45, ex. 5 & ex. 7 at 28.  For most of his
employment at the College, including up to the point when his
contract was not renewed, Plaintiff was the Associate Vice-
President of Human Resources.  Id., ex. 7 at 28-32.

contracts when they were not going to be recommended for renewal. Elam testified that he made that recommendation because he thought six months notice was too long.[6]   On May 18, 2009, the Board approved Elam's proposed amendment reducing the notice period to three months.   Ten days later Elam gave Connors a notice of nonrenewal of his contract, which was to expire August 31, 2009.[7] Plaintiff claims his nonrenewal for the year 2009-2010 was unlawful First Amendment retaliation against him for the testimony he had given in July 2008.

There is no summary judgment evidence that President Elam at any point during any of the foregoing events culminating in the nonrenewal of Plaintiff's contract had any knowledge that Connors had given adverse testimony in a trial the year before Elam became president.   Elam's unrefuted testimony is that he decided not to renew Plaintiff's contract "[b]ecause I felt that it was appropriate based on the assessment that I had done of his abilities as a human resource associate vice-president."[8]   Elam stated that his judgment was formed during a series of meetings with all employees of the College that he began having as soon as he arrived on campus as president.   Many meetings were one on one with employees and some were departmental.   Elam received:

---

[6] Id., ex. B at 57.

[7] Id., ex. B, at 6, 25.

[8] Id., ex. B at 15.

> unsolicited comments about a number of things. . . .
> [I]ssues came up regarding the competency of the
> associate vice-president for human resources. . . .  But
> what I look for are patterns, patterns that form over
> time.  And when you talk to a number of people and they
> give you similar information, then you have to understand
> that there must be something there.[9]

Although unable to name particular employees who were critical of

Plaintiff, Elam testified that he heard various of them talk about

Plaintiff's "performance, his judgment, inconsistencies with

implementation of policies, poor decisions related to poor

judgment."[10]   Elam also talked with Plaintiff's supervisor Lisa

Templer about Plaintiff and his future at the College.  Ms. Templer

expressed dissatisfaction with Plaintiff's performance, and when

asked whether there might be another place for Plaintiff, Ms.

Templer answered in the negative.[11]  Ms. Templer testified that she

was not happy with Plaintiff's performance because of repeated

mistakes that he made in reporting, several instances of Plaintiff

making arguably inappropriate comments, and Plaintiff's poor

handling of a particular employee.[12]  She testified that, "It was

not isolated to two or three reports and one comment about an admin

---

[9] Id., ex. B at 16.

[10] Id., ex. B at 17.

[11] Document No. 45, ex. 8 at 22.

[12] Id., ex. 8 at 19, 20, 24, 26, 29, 51.

assistant.    It  was  a  pattern  of  behavior. . . .  It  was  just

pervasive."[13]

In  Plaintiff's  written  performance  evaluation  for  2007-08,[14]

which  was  prepared  by  Ms.  Templer  before  Elam  became  president,  it

was  reported  that  Plaintiff  failed  to  "meet[]  performance  standards

required"  and  needed  improvement  in  three  categories:  (1)  caliber

of  work  produced  or  accomplished;  (2)  soundness  of  conclusions,

decisions,  and  actions;  and  (3)  effectiveness  in  relating  in  an

appropriate  and  productive  manner  to  subordinates,  associates,

superiors,  and  others.   Plaintiff  was  reported  to  exceed  standards

in  one  category:  ability  to  generate  worthwhile  new  ideas  or

techniques  having  practical  applications.    In  all  other  metrics

Plaintiff  was  said  to  "meet[]  performance  standards  required."

Plaintiff's  written  performance  evaluations  in  the  immediate  years

preceding  his  testimony  in  the  copyright  case  ranked  him  with  his

lowest  mean  scores  on  some  of  the  same  qualities  still  found  to  be

---

[13] Id., ex. 8 at 25.

[14] Id., ex. 3.  Plaintiff objects to the employment evaluations
presented in Defendants' summary judgment evidence on the grounds
that they are not authenticated and contain hearsay and hearsay
within hearsay.   Document No. 48 at 2.   Plaintiff argues that
"[t]hey are also vague, confusing and ambiguous without explanation
of the purported analysis contained within them."  Id.  Defendants
cured the authentication objection by resubmitting the exhibits
with an authentication from the custodian of records.   Document
No. 50 at 1, ex. 3.   The custodian's affidavit satisfies the
requirements of the business records exception to the hearsay rule.
Fed. R. Evid. 803(6).

deficient in 2007-08, *e.g.*, "relationships with student and other teams."  His 2004-05 evaluation stated,

> In general, there are still trust issues across the campus with Dr. Connors.  He continues to say things off the top of his head and they are not correct or not truthful--I do think he is working hard on this issue, however. . . .  Many times he will not pay attention to the detail of something.  He seems to work at a surface level and problems occur because of not "drilling down" to issues that need to be solved. . . .  You fail to apply your excellent skills and knowledge in a supportive, collaborative manner as a member of the College of the Mainland team.

Document No. 45, Ex. 2.

President Elam testified that while Lisa Templer supported his decision for nonrenewal, he made the decision himself based upon his own evaluation of Plaintiff's abilities as a human resources manager.[15]  Thus, when Elam presented to the Board a long list of employees for renewal contracts for 2009-10, he omitted Plaintiff's name from the list.  Ralph Holm, a Board member and now chairman, testified that the Board approved the president's recommendation and the only reason that Elam gave to him for Plaintiff's nonrenewal was Plaintiff's unsatisfactory performance.[16]  Holms testified, moreover, that he was not "familiar with Dr. Connors

---

[15] Document No. 48, ex. B at 24.

[16] Id., ex. C at 10.

being subpoenaed to testify" and that he had not "ever discuss[ed]
Dr. Connors' testimony with anyone."[17]

In sum, Plaintiff has presented no summary judgment evidence
that Elam when he made his recommendation of nonrenewal to the
Board had any knowledge of the adverse testimony given by Plaintiff
in the copyright case the year before Elam arrived as president.
The same is true as to members of the Board when they adopted
Elam's recommendation.  There is no evidence that any Individual
Defendant except Ms. Templer, who was not a Trustee or ultimate
decision maker, knew of Plaintiff's protected speech or considered
it in any way in connection with the nonrenewal of Plaintiff's
contract for 2009-10.  There is summary judgment evidence that Ms.
Templer knew about Plaintiff's testimony and expressed her
disapproval of it to Plaintiff in November 2008.  There is no
evidence, however, that Ms. Templer on the heels of that
performance evaluation urged the nonrenewal of Plaintiff's
contract.  Under the former policy (before Elam), Plaintiff was
entitled to six months' notice of nonrenewal, that is, notice no
later than February 28, 2009, if Plaintiff were not to be renewed
on September 1, 2009.  There is no summary judgment evidence that
Ms. Templer on or before the then cut-off date of February 28,
2009, did anything to obtain the nonrenewal of Plaintiff's contract
because of his July 2008 testimony.  "The cases that accept mere

_____

    [17] Id., ex. C. at 24.

10

temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'"  Clark County School Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001).

It appears from the summary judgment record that the Board is the final policymaking authority on renewal of employment contracts.  *See* Beattie, 254 F.3d at 603 (finding that when the board oversaw the superintendant's employment recommendation, the board was the final policymaking power on employment decisions). As noted above, there is no evidence that the Board harbored any retaliatory motive against Plaintiff or that any individual Trustee knew of Plaintiff's adverse testimony the previous year.  As already observed, there is no evidence to show that Elam knew of the protected speech.  Plaintiff relies on Lisa Templer's expressed disappointment about Plaintiff's testimony, but she was two steps removed from the decision.  To impute her allegedly improper motive to the Board, Plaintiff must demonstrate that the board approved both her decision and the basis for it.  Beattie, 254 F.3d at 603 (citing City of St. Louis v. Praprotnik, 108 S. Ct. 915 (1988)). Plaintiff has provided no such evidence.

Plaintiff in his Supplemental Response correctly argues that circumstantial evidence can be sufficient to prove illegitimate retaliatory intent by public officials.  *See* Thompkins v. Vickers,

26 F.3d 603 (5th Cir. 1994).   Plaintiff "must affirmatively prove--either with direct evidence or with a plausible chronology of events--" that the College did not renew Plaintiff's one-year contract because of his First Amendment speech.  Brady, 113 F.3d at 1425.   The question here is whether the circumstantial evidence relied upon by Plaintiff--inferred from the proven facts of Plaintiff's protected speech in a July, 2008 trial, Ms. Templer's expression of disapproval of his testimony in November, and his subsequent nonrenewal in May, 2009, based on the recommendation of the new president Michael Elam--when viewed in a light most favorable to Plaintiff, would be sufficient to permit a rational trier of fact to find that Plaintiff's 2008 testimony was a substantial or motivating factor for the College's action.   The circumstantial evidence is not viewed in a vacuum, however, but in the context of all uncontroverted summary judgment evidence of record.   Given the wide gaps in causal connection established by the uncontroverted summary judgment evidence set out above, Plaintiff fails to raise a genuine issue of material fact that his protected speech in July, 2008 was a substantial or motivating factor behind the College's adverse employment action.  Defendants are therefore entitled to summary judgment.

B.    Title VII Retaliation

Title VII proscribes an employer from discriminating against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).[18] The framework set out in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973) applies to a retaliation claim under 42 U.S.C. § 2000e-3(a) just as it would to other Title VII discrimination claims.  McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir. 1983).

Plaintiff asserts that his contract was not renewed not only because of his unfavorable testimony at the CAPT trial but also because he refused "to follow discriminatory practices" urged by board member Bennie Matthews to hire primarily black applicants and if necessary to pay them higher wages than other applicants.[19]  It is uncontroverted that Plaintiff, who was the Human Resources manager, did not yield to Matthews's importunities to discriminate. Plaintiff cites Dupont-Lauren v. Schneider (USA), Inc. for the

---

[18]  The statute also prohibits discrimination against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  Id.; see also Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1135 (5th Cir. 1981), cert. denied 102 S. Ct. 1630 (1982) (noting the distinction between the opposition clause and the participation clause).  Plaintiff does not allege anything that would invoke the participation clause, so only the opposition clause is relevant for this analysis.

[19] Document Nos. 22 at 8; and 48, ex. A at 96.

13

proposition that "Protesting unspecified 'racism' and 'discrimina-tion' by an employer constitute protected activity."[20]  994 F. Supp. 802, 822 (S.D. Tex. 1998).  Dupont-Lauren, however, demonstrates the necessity of taking some sort of action in order to establish a prima facie case under the opposition clause.  Id. (citing to cases finding protected activity in situations where an employee does one of the following: files a charge of discrimination with an external agency, sends letters protesting racism by an employer, pickets an employer, and makes complaints to an officer regarding discriminatory practices).  Plaintiff does not provide any evidence that he took any action under the protection of Title VII to protest, report, or complain about Defendant Matthews's comments. Deposition of Plaintiff, at 96.  Thus, there is no summary judgment evidence of any Title VII unlawful employment practice by Defendants or belief that Defendants were engaged in such, and there is no summary judgment evidence that Plaintiff engaged in any protected activity to oppose such a practice.

The summary judgment evidence fails to raise so much as a fact issue that there was any Title VII retaliation against Plaintiff, to which Plaintiff implicitly agreed during oral arguments, and this claim is therefore dismissed.

---

[20] Document No. 48 at 15.

C.    <u>Tortious Interference with an Existing Contract</u>[21]

Plaintiff was allowed to replead his tortious interference with contract claim against the Individual Defendants.    The relevant inquiry for such a claim is whether Plaintiff has alleged facts supporting the conclusion that the Individual Defendants' actions were motivated *solely* by their own self interest, *and* that such self-interest was in opposition to the College's, irrespective of any bad faith with respect to Plaintiff.  *See* <u>Berry v. Lee</u>, 428 F. Supp. 2d 546, 561 (N.D. Tex. 2006) (dismissing a tortious interference with contract claim for failure to allege that the defendant agents acted solely in their own interests and contrary to their corporation's).[22]   Plaintiff's Amended Complaint again

---

[21] Plaintiff withdrew his tort claims (specifically including tortious interference with an existing contract) against the College in his response to Defendants' initial motion to dismiss, Document No. 15 at 4, and the Court dismissed those tort claims without prejudice in its September 8, 2011 Order.  Document No. 21 at 4 n.9.  Because Plaintiff has pled no facts in support of a tortious interference with a contract claim against the College, and presents no summary judgment evidence of such, to the extent that Plaintiff may be attempting to reassert that claim against the College, it is DISMISSED.

[22] Plaintiff must "prove that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense," and an agent's "mixed motives--to benefit both himself and the corporation--are insufficient to establish liability."  <u>Powell Indus., Inc. v. Allen</u>, 985 S.W.2d 455, 457 (Tex. 1998); *see also* <u>ACS Investors, Inc. v. McLaughlin</u>, 943 S.W.2d 426, 432 (Tex. 1997) ("[T]he plaintiff must show that the officer acted in a manner so contrary to the corporation's best interests that his her or actions could only have been motivated by personal interest.").

fails to allege facts sufficient to state such a claim.
Furthermore, Plaintiff presents no evidence in support of such a
claim on summary judgment.  Plaintiff has cited to nothing in the
record to support his allegation that any of the Individual
Defendants was motivated by any self-serving personal interest as
distinguished from or as opposed to the College's interest.
Plaintiff's response at oral argument that some Defendants "did not
like" Plaintiff is not enough.  Plaintiff's allegation is purely
conclusory and without support in the summary judgment evidence,
and is therefore dismissed with prejudice against all Individual
Defendants.

D.   Breach of Contract

Plaintiff contends that the College breached a contract with
Plaintiff because he had a "valid, renewable contract" that the
College "promised it would continue to renew annually."[23]  He
testified that while there was no policy stating that renewal was
automatic, it was the practice to do so.[24]  He further testified
that, "Policy DMAA says that you could only nonrenew or terminate
after you went through a progressive discipline process."[25]
Plaintiff stated that this was the policy until "about a week

---

[23] Document No. 22 at 11.

[24] Document No. 48, ex. A at 81-82.

[25] Id. at 82.

16

before" he was nonrenewed.[26]  Finally, Plaintiff testified that, "I believe Henry Pope told me that unless I screwed up, that I could pretty much count on having a new contract every year."[27]

Defendants reply and Plaintiff does not dispute that the College fulfilled all of its contractual obligations to Plaintiff under his one-year contract.[28]  They further contend that any oral promises made for automatic renewal are barred by the statute of frauds.[29]  Finally, Defendants argue that "Plaintiff has failed to identify any policies of the College (or terms in his employment contract) requiring cause or progressive discipline as a prerequisite for contract nonrenewal because no such policies exist."[30]

The elements of a cause of action for breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex.App.--Houston [14th Dist.] 2005, no pet.).

---

[26] Id.

[27] Document No. 45, ex. 7 at 83.  Plaintiff testified that Henry Pope was the Vice-President for College and Financial Services at the time that statement was made.  Id.

[28] Document No. 45 at 24.

[29] Id.

[30] Document No. 50 at 6.

It is undisputed that a valid, written, signed one-year contract existed between Plaintiff and the College.[31]  The contract for 2008-2009, presumably like the previous annual contracts signed by Plaintiff, was only for a 12-month term from September 1, 2008 to August 31, 2009.  The contract contains no provision for renewal or for automatic renewal.[32]  Plaintiff offers no evidence that the College breached any term of his one-year written agreement, and the summary judgment evidence is uncontroverted that the College fully performed that agreement.

Plaintiff's breach of contract claim relies on his contention of an unwritten, oral "automatic renewal" practice and Henry Pope's oral representation that Plaintiff "could pretty much count on having a new contract every year."  The statute of frauds requires that "an agreement which is not to be performed within one year from the date of making the agreement" is not enforceable unless in writing and signed by the person (or someone authorized to sign for him) charged with the agreement.  TEX. BUS. & COM. CODE ANN. § 26.01 (West 2005).  An oral agreement for Plaintiff to be employed for the entirety of the following year or additional years beyond the end of his current year's contract would necessarily require for its completion a length of time greater than one year from when the promise was made.  Pope's expectation of new contracts every year,

---

[31] Document No. 45, ex. 7.

[32] Id.

if taken as Plaintiff does, would essentially be the same as a promise of employment for life.  Oral agreements like this are not enforceable by reason of the statute of frauds.  *See, e.g.*, Massey v. Houston Baptist Univ., 902 S.W.2d 81, 84 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (oral agreement that employee would have a job for life or until retirement as long as his work was satisfactory was barred by statute of frauds).

Finally, Plaintiff's reliance upon the College's policy has no support in the summary judgment evidence.  Defendants have exhibited Policy DMAB (LOCAL), which was the College's nonrenewal policy before it was modified shortly before Plaintiff's nonrenewal.  The prior written policy contains a nonexhaustive list of circumstances in which an employee's contract may not be renewed, and states that it does not apply to disciplinary issues because another policy provides a process for doing that.[33]  In sum, there is no summary judgment evidence that the College's previous policy entitled an employee to automatic renewal of a one-year contract.  Moreover, that policy was changed before Plaintiff received his letter of nonrenewal, and the amended policy-- applicable to Plaintiff when he was not renewed--again contains no mention of automatic or even presumptive renewal of one-year contracts.[34]  Plaintiff does not challenge the College's process

---

[33] Document No. 50, ex. 3d.

[34] Document No. 50, ex. 3f.

when it amended the policy, nor does he allege that he did not accept it.

The summary judgment evidence does not raise so much as a fact issue that the College was bound by any agreement to renew Plaintiff's contract, and Plaintiff's breach of contract claim is dismissed with prejudice.

### III.  Order

For the foregoing reasons, it is

ORDERED that Defendants' Motion for Summary Judgment is GRANTED and all of Plaintiff's claims are dismissed with prejudice.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 1st day of May, 2012.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE